UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KENT ALEXANDER TAYLOR, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No.15-30183-KAR |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| Defendant | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION
TO AFFRM THE DECISION OF THE COMMISSIONER
(Dkt. Nos.  12 & 14)


ROBERTSON, U.S.M.J.

Before the court is an action for judicial review of a final decision by the acting

Commissioner of the Social Security Administration ("Commissioner") regarding the plaintiff's

entitlement to Supplemental Security Income ("SSI").  Plaintiff Kent Alexander Taylor

("Plaintiff") asserts that the Commissioner's decision denying him such benefits – memorialized

in a July 23, 2014 decision by an administrative law judge ("ALJ") – impermissibly rejected

aspects of a Mental Residual Functional Capability Questionnaire completed by Plaintiff's

treating mental health care provider and ignored substantial record evidence that contradicted his

conclusion that Plaintiff was not disabled from working by mental health impairments.  Plaintiff

has filed a Motion for Judgment on the Pleadings, while the Commissioner has moved to affirm

on the grounds that the ALJ's decision is supported by substantial evidence.

The parties have consented to this court's jurisdiction (Dkt. No. 17).  *See* 28 U.S.C. §

636(c); Fed. R. Civ. P. 73.  For the following reasons, the court will allow the Commissioner's

motion to affirm and deny Plaintiff's motion for judgment on the pleadings.

I.    PROCEDURAL BACKGROUND

Plaintiff filed his initial application for SSI benefits on August 20, 2009.  *See Taylor v. Astrue*, 899 F. Supp. 2d 83, 85 (D. Mass. 2012) ("*Taylor I*").  He claimed he was disabled due to a herniated disc and numbness in his left leg and foot, with an onset date of November 1, 2008. The application was denied initially and on reconsideration.  At Plaintiff's request, a hearing was scheduled in front of an ALJ, which hearing was held on May 20, 2011.  *Id.*   The ALJ denied Plaintiff's claim in a decision dated July 27, 2011.  The Appeals Council denied review, and Plaintiff filed an action in this court.  *Id.* at 86.  This court concluded that the ALJ had not adequately explained the weight he assigned to medical opinion evidence from Gina Hughes, an Advanced Practice Registered Nurse treating Plaintiff's mental health impairments, and that this error in the evaluation of Ms. Hughes' opinion might have affected the outcome of the case. The court remanded the matter to the Commissioner for a new hearing.  *See id.* at 88-90.

On February 16, 2012, Plaintiff filed a new claim for SSI (Administrative Record ("A.R.") at 577).  The Appeals Council ordered that the subsequent claim be associated with the remanded claim, and, on October 25, 2013, the ALJ conducted a single hearing on both claims (*id.*).  The ALJ concluded that Plaintiff had not been under a disability, as that term is defined in the Social Security Act ("the Act"), since August 20, 2009, and denied both claims (*id.* at 592-93).  The Appeals Council denied review, and this appeal followed.

II.   DISABILITY STANDARDS AND THE ALJ'S DECISION

At issue is whether Plaintiff was disabled by a combination of physical and mental impairments during the relevant period (Dkt. No. 13 at 3).  The Act defines a person who is disabled as an individual who "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 1382c(a)(3)(A).  An individual is considered disabled within the meaning

of the Act

> only if his physical and mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B); *see also generally Bowen v. Yuckert,* 482 U.S. 137, 146-149 (1987).

In determining disability, the Commissioner follows a five-step protocol described by the

First Circuit, as follows:

> First, is the claimant currently employed?  If he is, the claimant is automatically
> considered not disabled.

> Second, does the claimant have a severe impairment?  A 'severe impairment' means an
> impairment 'which significantly limits the claimant's physical or mental capacity to
> perform basic work-related functions.'  If he does not have an impairment of at least this
> degree of severity, he is automatically not disabled.

> Third, does the claimant have an impairment equivalent to a specific list of impairments
> in the regulations' Appendix 1?  If the claimant has an impairment of so serious a degree
> of severity, the claimant is automatically found disabled.

> . . .

> Fourth . . . does the claimant's impairment prevent him from performing work of the sort
> he has done in the past?  If not, he is not disabled.  If so, the agency asks the fifth
> question.

> Fifth, does the claimant's impairment prevent him from performing other work of the sort
> found in the economy?  If so he is disabled; if not he is not disabled.

*Goodermote v. Sec'y of Health & Human Servs.,* 690 F.2d 5, 6-7 (1st Cir. 1982).   A claimant has

the burden of proof through step four of the analysis.  *See id.* at 7.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the August 20, 2009 application date (A.R. at 579).  At step two, the ALJ found that Plaintiff had the following severe impairments: a history of bilateral inguinal hernia repair; degenerative disc disease; osteoarthritis of the left knee; intermittent explosive disorder; mood disorder; and anti-social personality disorder (*id.*).  He concluded that these impairments, alone or in combination, did not meet or equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Sub-Part P, Appendix 1 (*id.* at 580).

As required, the ALJ evaluated Plaintiff's mental impairments pursuant to specific guidelines set out in 20 C.F.R. § 404.1520a.  He concluded that the "longitudinal mental health evidence of record" supported findings, as to the so-called Paragraph B criteria, of a mild restriction in activities of daily living; moderate difficulties in social functioning; and mild difficulties with regard to concentration, persistence, or pace.  He noted no episodes of decompensation of extended duration during the relevant period (*id.*).[1]  Accordingly, the ALJ concluded that the severity of Plaintiff's mental health impairments, considered singly or in combination, did not meet or medically equal the severity of the criteria in listings 12.04 (affective disorders), 12.06 (anxiety related disorders), or 12.08 (personality disorders) (A.R. at 580).

---

[1] Paragraph B criteria are met when a claimant's disorders result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  20 C.F.R. Pt. 404, Subpt P., App. 1.  "Marked difficulty" means difficulty that is "more than moderate but less than extreme." *Id.*

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with some additional limitations.[2]  Based on the evidence of Plaintiff's physical impairments, the ALJ concluded that Plaintiff was capable of lifting and carrying items weighing 10 pounds occasionally; that he could lift and carry items weighing under 10 pounds frequently; that he was limited to standing or walking for two hours in an 8-hour day; and that he required an option to sit or stand at will.  In posing questions to the vocational expert at the hearing, the ALJ added the limitation that use of Plaintiff's dominant right hand for purposes of forceful grasping, twisting, or fine tuning should be limited to a frequent but less than constant job requirement (*id.* at 625-27).  Based on the evidence related to mental health impairments, the ALJ concluded that Plaintiff would be limited to no more than occasional interactions with co-workers and supervisors, and none with the general public (*id.* at 581).  At the fifth step, the ALJ found that Plaintiff was unable to perform any past relevant work.  Based the hypothetical questions the ALJ had posed to a vocational expert at the first hearing on Plaintiff's 2009 application, and on the variation he introduced to the vocational expert who testified at the second hearing (*id.* at 626-28), he concluded that, considering Plaintiff's age (he was 47 at the time of the second hearing), education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff would be able to perform (*id.* at 591).  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

III.     STANDARD OF REVIEW

---

[2] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence and based on the correct legal standard.  *See* 42 U.S.C., § 1383(c)(3); *see also, e.g., Smith v. Astrue,* 851 F. Supp. 2d 305, 307 (D. Mass. 2012).  A court must uphold the findings of the Commissioner "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.'"  *Ortiz v. Sec'y of Health & Human Servs.,* 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.,* 647 F.2d 218, 222 (1st Cir. 1981)).  "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  The resolution of conflicts in the evidence is for the [Commissioner], not the courts."  *Ortiz,* 955 F.2d at 769 (citing *Rodriguez,* 647 F.2d at 222).  "Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusions.'"  *Greene v. Astrue,* No. 11-30084, 2012 WL 1248977, at *1 (D. Mass. April 12, 2012) (quoting *Ortiz,* 955 F.sd at 769).  That said, the Commissioner may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

IV.   DISCUSSION

Plaintiff claims that the ALJ erred in two closely related respects:  (1) he improperly failed to give controlling weight to the opinion of Ms. Hughes, A.P.R.N., Plaintiff's treating mental health care provider (Dkt. No. 13 at 9-13); and (2) the record lacked substantial evidence to support the ALJ's conclusion that Plaintiff was not disabled by his serious mental health impairments (*id.* at 13-20).[3]  Plaintiff has not taken issue with the ALJ's assessment of his

---

[3] Plaintiff contends in his memorandum that the ALJ "erred by rejecting the treating source's opinion [by] finding that depression was not alleged on the original application for benefits" (Dkt. No. 13 at 13).  Because this observation by the ALJ was accurate as a matter of fact, the ALJ did not err in finding that depression was not among the impairments identified in Plaintiff's

restrictions based on his physical impairments.  Accordingly, the court has not addressed those

impairments and the resulting restrictions other than to note their existence.

      1.  <u>Ms. Hughes' opinions were not entitled to controlling weight.</u>

      In the portion of the December 27, 2010 Mental Residual Functional Capacity

Questionnaire ("MRFC") completed by Ms. Hughes that asked the evaluator to rate the subject's

mental abilities and aptitudes to perform unskilled work, Ms. Hughes opined, via check mark,

that Plaintiff would have limited but satisfactory ability to ask simple questions or request

assistance, but also indicated, as to the same question, that Plaintiff would have no useful ability

to function in this regard.  She indicated, via checkmark, that plaintiff would have no useful

ability to function in the category of accepting instructions and responding appropriately to

criticism from supervisors, and that he would be unable to meet competitive standards in getting

along with co-workers, responding appropriately to changes in the workplace, and dealing with

normal work stress.  She commented that Plaintiff had remarkable difficulty with redirection and

criticism, was unable to deal with any schedule changes, and had a poor response to stress and

dealing with others (A.R. at 444).  In the portion that asked the evaluator to rate the subject's

mental abilities and aptitude needed to do particular types of jobs, she opined, via check mark,

that Plaintiff would be unable to meet competitive standards in maintaining socially appropriate

behavior and that he would be severely limited but not precluded from interacting appropriately

---

initial SSI application.  Indeed, in documents filed by Plaintiff in connection with his 2009
benefits application, he did not claim that he was disabled by any mental health impairment
(A.R. at 137-59).  He further indicated that his "conditions" did not affect his memory,
completion of tasks, concentration, understanding, ability to follow instructions, or his ability to
get along with others (*id.* at 157).  Viewed in its entirety, it appears that Plaintiff's second claim
of error is more accurately described as a claim that the ALJ's decision ignored or was
inconsistent with substantial evidence in the record, including Ms. Hughes' opinion, allegedly
establishing that Plaintiff's mental health impairments were disabling (Dkt. No. 13 at 13-20).

with the general public.  She commented that Plaintiff had poor insight and social skills (*id.* at 445).

Plaintiff complains that the ALJ failed to accord controlling weight to these opinions and points out that the ALJ referred to the MRFC as a "*solicited* treating medical source opinion" (*id.* at 590) (emphasis supplied).  "[I]t is improper to discount a treating source's opinion simply because it was solicited."  *Gonzalez v. Astrue,* C.V. No. 11-30201-KPN, 2012 WL 2914453, at *3 (D. Mass. July 5, 2012) (citing *Gonzalez Perez v. Sec. of Health & Human Servs.,* 812 F.2d 747, 749 (1st Cir. 1987) ("Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them.")).  Notwithstanding the ALJ's expression of skepticism about the MRFC, his treatment of Ms. Hughes' opinions "can still pass muster if the other reasons given to accord [the] treating [provider's] opinion little weight are adequately supported."  *Gonzalez,* 2012 WL 2914453, at *3.  The ALJ's reference to the MRFC as solicited was gratuitous and unhelpful, but it formed no part of his explanation for his rejection of Ms. Hughes' opinion evidence.  His reasons for declining to credit aspects of the MRFC are clearly explained, adequately supported by the record, and free of legal error.  *See King v. Astrue*, Civil No. 09-337-P-H., 2010 WL 4457447 (D. Me. Oct. 31, 2010) (ALJ complied with applicable requirements when he expressly referred to treating source opinion evidence, explained the weight afforded to it, and provided discussion adequate to allow reviewer to follow his reasoning).

First, contrary to Plaintiff's contention – and as this court already pointed out in *Taylor I* – because a nurse, such as Ms. Hughes, was "not among the 'acceptable medical sources' listed in 20 C.F.R. § 416.902," Ms. Hughes is not a treating source whose opinion was presumptively entitled to controlling weight.  *See Taylor I*, 899 F. Supp. 2d at 88 (citing Social Security Ruling

06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)); *see also, e.g., Johnson v. Colvin*, C.V. No. 13-40003-TSH, 2016 WL 4639134, at *9 (D. Mass. Sept. 6, 2016). Nonetheless, because Ms. Hughes was a "treating source," and because the case was remanded for this purpose, the ALJ was required to explain the weight he accorded to her opinions. *See Taylor I*, 899 F. Supp. 2d at 88 (citing Social Security Ruling 06-03p, 2006 WL 2329939, at *6 (an ALJ generally should explain the weight given to opinions from treating medical sources whose opinions are not presumptively controlling)); *see also Johnson*, 2016 WL 4639134, at *9 (opinions of "other medical sources" are not entitled to controlling weight; an ALJ is not required to provide "good reasons" for the weight assigned to such opinions, but cannot ignore and must adequately explain the treatment of opinions from such other medical sources).

In his decision, the ALJ explained that he gave significant weight to Ms. Hughes' opinion in the MRFC that Plaintiff had limitations of a moderate severity attributable to his mental health impairments (*id.* at 590). He gave no weight to her opinions about the disabling effect Plaintiff's mental health impairments would have on his performance in the workplace because he concluded that there were internal inconsistencies in the MFRC and that it was inconsistent with the longitudinal evidence of Plaintiff's mental health status.

Turning first to internal inconsistencies, the ALJ noted that Ms. Hughes assigned Plaintiff a current global assessment functioning ("GAF") score of 54 in the MRFC and stated that 54 was Plaintiff's highest GAF score during the preceding year.[4]  A GAF score of 54 indicates

---

[4] The GAF scale was designed to provide a rough estimate of an individual's psychological, social, and occupational functioning. *See Bourinot v. Colvin*, 95 F. Supp. 3d 161, 178 (D. Mass. 2015) (citing *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)).  As a result of concerns about the GAF scale's subjectivity and the basis of scores, the American Psychiatric Association abandoned the GAF scale in the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. *See id.*; *see also, e.g., Kroh v. Colvin*, No. 13-CV-01533, 2014 WL 4383675, at *17 (M.D. Pa. Sept. 4, 2014).  The Social Security Administration

"[m]oderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) *or* moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, at 34 (4th ed. 2000) ("DSM-IV") (emphasis in original).  The ALJ accepted the GAF score of 54 in the MRFC as an accurate reflection of an opinion by Ms. Hughes that Plaintiff's mental health impairments caused moderate functional limitations.  He gave this opinion significant weight because this GAF score in the MRFC was consistent with scores reflected over time in Plaintiff's records from Ms. Hughes' office, which ranged from 48 at intake[5] to 56 in May of 2012 and generally reflected improvement over time (A.R. at 334, 394, 429, 506, 829, 831, 833, 836, 838, 855, 859).  He found that the moderate symptoms or moderate limits on functionality reflected in the GAF score of 54 were inconsistent with Ms. Hughes's opinion that Plaintiff's mental health impairments disabled him from working (*id.* at 590).  The ALJ also noted, by way of example, that, although the narrative stated that Plaintiff had a poor response to stress and dealing with others, Ms. Hughes had, at the same time, indicated that Plaintiff would be seriously limited but not precluded from dealing with the stress at work, even if the work was semi-skilled or skilled work (*id.* at 444-45, 590-91).  The ALJ further concluded that Ms. Hughes' opinions about the limits on Plaintiff's ability to work were not grounded on adequate knowledge of the range of jobs available in the national economy and the accommodations for disabilities that can be made in the workplace (*id.* at 591).

---

has stated that it will continue to receive and consider GAF scores as it would other opinion evidence, with the caveat that an ALJ may only give a GAF score significant weight if that score has supporting evidence.  *See Bourinot*, 95 F. Supp. 3d at 178; *Kroh*, 2014 WL 4384675, at *18.

[5] A GAF score of 41-50 indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work).  DSM-IV at 34.

The ALJ observed that Plaintiff's primary mental health complaint was regarding social interactions, with reported irritability and angry outbursts in interactions with others (*id.* at 590). In rejecting some of Ms. Hughes' opinions, the ALJ further relied on the longitudinal mental health evidence of record, reviewed in detail in his decision (*id.* at 586-90), which reflected, among other things, that Plaintiff generally presented as appropriately oriented times three and with a normal affect in interactions with health care providers, was able to manage tasks analogous to those performed in the workplace, such as using a computer and managing his money, and that he engaged in multiple daily living activities, including a number of activities that involved social interactions, and had GAF scores that showed improvement over time and moderate difficulties in social interactions, consistent with notes in his treatment records that indicated significant reductions in anger outbursts (*id.* at 586-90).  He noted as well that the September 9, 2009 Function Report filled in by Plaintiff provided that Plaintiff got along with authority figures "pretty well, but not great all the time," and that he did not respond well to derogatory language, but otherwise indicated few, if any, limitations in social interactions that might be viewed as attributable to a mental health impairment (*id.* at 152-59, 590-91).

"Reconciling conflicts of evidence not only includes looking at medical evidence but also 'determin[ing] issues of credibility and draw[ing] inferences from the record.'"  *Dias v. Colvin*, 52 F. Supp. 3d 270, 282 (D. Mass. 2014) (quoting *Irlanda Ortiz*, 955 F.2d at 769).  "[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or the courts."  *Rodriguez*, 647 F.2d at 222; *see also Reyes v. Astrue*, Civil Action No. 11-30197-KPN, 2012 WL 2178963, at *3 (D. Mass. June 13, 2012) (if a treating source opinion is inconsistent with other substantial evidence in the record, the conflict is for the ALJ, not the court, to resolve).  The ALJ gave good reasons for

rejecting certain of Ms. Hughes' opinions in the MRFC, and his reasons for rejecting those opinions were supported by substantial evidence in the record.  There was no error.  *See Johnson*, 2016 WL 4639134, at \*\*9-10 (ALJ properly granted treating providers' opinions some or little weight when those opinions were inconsistent with substantial record evidence); *Castro v. Barnhart,* 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (ALJ may reject treating provider's opinion if it is inconsistent with other substantial evidence in record, even if other evidence consists of reports from non-treating providers).

2.  Substantial evidence supported the ALJ's RFC finding

Plaintiff's second contention requires little additional analysis.  The ALJ's RFC finding was that Plaintiff had:

> the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a).  The claimant is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently.  The claimant is limited to standing or walking for two hours per 8-hour day.  The claimant requires a sit/stand at will option.  He is limited to no more than occasional interaction with co-workers and supervisors and none with the general public.

(A.R. at 581).  This finding was based on the ALJ's carefully documented review of the entire record, and credibility determinations that he made and explained (*id.* at 582, 586).  Substantial evidence of record related to Plaintiff's mental health supported this RFC finding, including the contents of Plaintiff's original application and function report, treatment notes from Plaintiff's health care providers, including mental health care providers, Ms. Hughes' opinions in the MRFC, reports from psychological consultative examinations that included diagnostic testing, and Plaintiff's appearance and testimony at the two hearings before the ALJ.  The ALJ gave significant but not controlling weight to those portions of Ms. Hughes' opinion that he concluded were consistent with other record evidence.  "This was within [the ALJ's] discretion, was supported by adequate grounds, and did not constitute legal error."  *Drew v. Soc. Sec. Admin.*,

No. 1:11-cv-00240-GZS, 2012 WL 1715181 (D. Me. Apr. 27, 2012).  By requiring limits on

Plaintiff's interactions with co-workers and supervisors and precluding interactions with the

general public, the RFC limited possible employment options for Plaintiff based on functional

limitations attributable to Plaintiff's serious mental health impairments.  Plaintiff has not claimed

that the ALJ failed to incorporate the functional limitations he identified in the RFC into the

questions he posed to the vocational expert.  Because the RFC was based on substantial record

evidence, it follows that the questions posed to the vocational expert also were based on

substantial evidence.  In these circumstances, the court must affirm the decision of the

Commissioner.  *See Bourinot*, 95 F. Supp. 3d at 183-84; *Drew*, 2012 WL 1715181, at *4.

IV.   CONCLUSION

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings is DENIED, and

the Defendant's Motion to Affirm the Commissioner's Decision is ALLOWED.  This case may

now be closed on the court's docket.

It is So Ordered.

Dated:  November 15, 2016                    /s/ Katherine A. Robertson
                                             KATHERINE A. ROBERTSON
                                             United States Magistrate Judge